373 So.2d 1278 (1979)
STATE of Louisiana, Appellee,
v.
Valeria Louise Chrystal WILLIAMS, Appellant.
No. 63133.
Supreme Court of Louisiana.
April 9, 1979.
Dissenting Opinion September 7, 1979.
Leila S. Withers, Withers & Withers, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Mary B. Gilliland, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.[*]
The accused and a co-defendant were convicted of theft, La. R.S. 14:67, and received a suspended sentence, conditioned on restitution of $211 to the department store from which certain goods were stolen.
On her appeal, the accused relies upon one assignment of error. The assignment relates to improper closing rebuttal argument by the prosecutor.
*1279 Context Facts
The accused, Miss Williams, and her co-defendant, Sedric Rogers, are charged with the theft of four pantsuits from a department store. They escaped, after chase, at the time of the theft.
The young black couple was arrested when, on the following day, they returned to the department store. Two store employees recognized them as the same couple that had stolen the pantsuits the previous day.
In explaining how she had recognized the co-defendant Rogers, one of the store employees testified that she particularly remembered his distinctive features as "[f]irst of all, he is rather tall and thin, and secondly the protruding lips."
The defense was alibi and mistaken identification. The stolen goods were never recovered. The state's case essentially depends on whether the two white store employees correctly identified the black couple that entered the store as the same couple that had stolen the pantsuits the day before.
Argument of Counsel
After the evidence closed, the prosecutor made his closing argument to the six-person jury. Then, in the course of defense counsel's closing argument, the following statement was made:
"Now my whole problem is that I know that you probably believe that store personnel don't have anything to gain by innocently accusing somebody of something but racism still exists in our society. You know, a lot of people say that all black people look alike and I don'tI don't really appreciate the statement, but a lot of people feel that way. Now, Mrs. Narozniak was saying and Mrs. Jones also, that Sedric Rogers has protruding lips. Well I'm sure you can look at me right now and you'll tell me now what you think my distinguishing feature is also. Probably, my nose, you know. And I can look at each one of you and tell you what I think stands out about you but don't you think that perhaps there might be a person that has that same distinguishing feature. You know, and you see people all the time and you say, wow, I bet that so and so is related to so and so, just because of how they look. Now, Baton Rouge is a smallreal big area and has a substantial black population and a lot of blacks do business at Dillards and I'm sure a lot of blacks go through there day in and day and night. And, our position is that Mrs. Narozniak and Mrs. Jones just saw two people that resembled Sedric Rogers and Valeria Chrystal."
In his rebuttal to defense counsel's argument, the prosecutor argued:
"Ladies and gentlemen I get to talk to you very very briefly again and the reason that I do is because the State does have the burden of proof in this case. We get a chance to rebut whatever the defense says in closing argument. Something came up in the closing argument that I hated to see arise and I ordinarily wouldn't even honor this comment but I am this time. And that's the subject of race. I don't think it had any place in this trial and I tried to avoid it and always try to avoid it. And I suppose it was aimed at you Mr. Scott and you Mr. Lucas since you are the two black people on this jury. But, let me remind you Mr. Scott it was not me that wanted to remove you from this jury because you would sleep through it. It was defense counsel"
The defense counsel interrupted and objected that the prosecutor improperly referred in rebuttal to defense counsel's overruled challenge for cause of the prospective juror Scott during jury empanelment.
The prosecutor replied that defense counsel chose to raise the issue of race in her argument and he should be permitted to rebut. The objection was overruled on that basis, and the prosecutor's rebuttal argument continued without further objection by the defense.
Improper Argument of Prosecutor
The trial court was in error in overruling the objection and in, at the least, failing to *1280 admonish the jury to disregard the prosecutor's improper argument.
The prosecutor's argument, referring to an overruled challenge by defense counsel to a sitting juror, was clearly improper. Contrary to the requirements of La.C.Cr.P. art. 774, the argument was not confined to the evidence, and it (probably inadvertently) may have appealed to the prejudice of a juror by reminding him that the defense had challenged him for cause.
(Concededly, the prosecutor's motive was well-intentioned. He was attempting to rebut any inference that the state had any racial bias. Nevertheless, in so doing, the prosecutor improperly commented upon the defense's overruled challenge for cause of a juror.)
This prosecutorial misconduct is sought to be excused as permissible retaliation to a prior defense argument, quoted above, which allegedly itself improperly appealed to the racial prejudices of the two black members on the jury. However, the defense argument, as we apprehend it, was not an appeal to racial prejudice, but rather was relevant to the issue of mistaken identification: The defense counsel was adverting to the common conception or misconception that all whites look alike to many blacks, and that all blacks look alike to many whites, insofar as they share common featuresred hair, protruding lips, etc.
The argument thus did not justify the improper prosecutorial response. It did not appeal to racial prejudice, nor was it directed at the two black jurors on the six-person panel any more than to the four white jurors.
The prosecutorial response was thus improper and potentially reversible.
Assignment Reviewable?
The state suggests that we should not review the assignment on the merits. It contends that, in addition to objecting to improper argument, to preserve the issue for review defense counsel must also move either for a mistrial or for an admonition to the jury to disregard the argument.
We find no merit to this suggestion. As we stated in State v. Hamilton, 356 So.2d 1360, 1363 (La.1978): "Once the objection has been made and overruled, clearly the court would additionally refuse any request for admonition or mistrial. ... [F]ailure to so move after the defense objection is overruled [thus] does not preclude review of the trial judge's failure to sustain a properly made objection." (If the objection is sustained, the defense may waive its right to a mistrial by accepting without objection at the time the trial court's admonition to the jury to disregard the improper argument. La.C.Cr.P. arts. 770, 771.)
Reversible Error?
The prosecutor's argument, referring to an overruled challenge for cause to a sitting juror, was thus improper, as not being confined to the evidence, and as at least potentially appealing to the possible prejudice of that juror against defense counsel who had unsuccessfully challenged him.
A close issue is presented as to whether, in fact, it was in total context so prejudicial as to require reversal. The jurors may well have received the comment in the spirit it was apparently intendednot to appeal to the challenged juror's prejudice, but simply to emphasize the lack of racial bias in the prosecution.
The determination of this issue is to some extent complicated in that the jury split 5-1 in rejecting the alibi evidence and in accepting the positive eyewitness identification of the two store employees that the young couple who casually entered their store were indeed the same persons who had dramatically stolen the pantsuits and escaped after chase the previous day. Nor are we unaware that the juror Scott, who had been unsuccessfully challenged for cause by the defense, was the foreman of the jury which convicted the accused.
Ultimately, we have determined that it is unlikely that the comment was received by Scott or the other jurors as an appeal to their prejudice or as anything other than a disclaimer of racial bias on the *1281 part of the state, stemming from the prosecutor's mistaken conception of the defense argument as an appeal to the racial sympathies of the two black jurors. As we noted in State v. Berain, 360 So.2d 822, 830 (La. 1978): "Before a verdict is set aside on the ground of improper argument, we must be convinced that the remarks influenced the jury and contributed to the verdict."
The defense counsel apparently did not feel that the unsuccessful challenge of Scott for cause (because he allegedly dozed during trial court instructions) prejudiced him against the defendants. The defense did not use any of its then unused preemptory challenges to excuse Scott after the denial of its challenge of him for cause. The improper reminder of the earlier challenge is not likely to have prejudiced the juror against the defendant any more than did the challenge itself, especially since in context its apparent motive was only to illustrate the state's lack of racial bias in the prosecution and was not an appeal to racial prejudice and, if an appeal to juror prejudice, was not likely received by the juror as such.

Decree
For the reasons assigned, we find no reversible error, and we affirm the conviction and sentence.
AFFIRMED.
SUMMERS, C. J., concurs for the reasons assigned.
DENNIS, J., dissents and assigns reasons.
SUMMERS, Chief Justice (concurring).
Defendant Valeria Louise Chrystal Williams was jointly charged with Sedric Rogers for the February 3, 1977 theft of merchandise valued at more than $100 but less than $500, the property of Dillards Department Store in Baton Rouge. La.Rev.Stat. 14:67. They were jointly tried before a jury of six and found guilty of theft of property having a value of $442. Valeria was sentenced to be confined to the parish jail for one year, with credit for time served. Sentence was suspended and defendant was placed on supervised probation for two years, a condition being that she make restitution to Dillards in monthly payments.
She assigns one ruling of the court as error. Sedric Rogers is not a party to this appeal.
The assignment of error urges that the trial judge committed error when he overruled a defense objection to the prosecutor's reference in closing argument to a defense challenge of a black juror for cause, the challenge having occurred during the jury selection process. Defense counsel argues that closing arguments must be confined to the evidence admitted, and because voir dire examination does not involve trial evidence, the remarks of the prosecutor were beyond the permissible bounds of argument.
In the early afternoon of February 3, 1977 a young black couple walked into Dillards Department Store. While the boy held a door open leading to a parking lot, the girl seized four pants suits from a nearby rack and fled through the open door. Mrs. Narozniak, the floor supervisor, saw what happened and gave chase, but the couple made their escape in an automobile in the parking lot. The supervisor managed to record the license plate number and reported it to the police.
The next day the supervisor again saw the couple in the store. She alerted the security guards and the couple was arrested. They were positively identified by the supervisor, not only on the basis of these two encounters, but also on the strength of a prior sighting in the store shortly before the preceding Christmas. Her identification was corroborated by a sales clerk at the store and another witness. Defendants claim they were together at a basketball game on the afternoon of the theft. Members of both families corroborated their accounts.
The case was called for trial on February 21, 1977, with the issue of identification squarely presented. During empanelment of the jury, the trial judge instructed Dan Scott and other prospective jurors at length *1282 on the function of jurors and the jury system. He then asked counsel if they elected to challenge any of the group for cause; whereupon, defense counsel declared:
"Your Honor, we wish to challenge Mr. Dan Scott for cause in that when the judge was giving instructions, defense counsel noticed that Mr. Scott was sleeping, more or less, and we're afraid that with this going on that perhaps he won't be able to be as attentive throughout the trial if selected."
The trial judge denied the challenge, stating that he did not consider Scott, a black man, to be asleep but perhaps resting his eyes. In the judge's opinion Scott seemed alert to what had been said.
Thereafter the trial proceeded on the issue of guilt or innocence, and when the taking of evidence was completed, the prosecutor made his closing argument. Defense counsel followed, and during the course of her closing argument, said:
"Now my whole problem is that I know that you probably believe that store personnel don't have anything to gain by innocently accusing somebody of something but racism still exists in our society. You know, a lot of people say that all black people look alike and I don'tI don't really appreciate the statement, but a lot of people feel that way. Now, Mrs. Narozniak was saying and Mrs. Jones also, that Sedric Rogers has protruding lips. Well I'm sure you can look at me right now and you'll tell me right now what you think my distinguishing feature is also. Probably, my nose, you know. And I can look at each one of you and tell you what I think stands out about you but don't you think that perhaps there might be a person that has that same distinguishing feature. You know, and you see people all the time and you say, wow, I bet that so and so is related to so and so, just because of how they look. Now, Baton Rouge is a smallreal big area and has a substantial black population and a lot of blacks do business at Dillards and I'm sure a lot of blacks go through there day in and day and night. And, our position is that Mrs. Narozniak and Mrs. Jones just saw two people that resembled Sedric Rogers and Valeria Chrystal."
In his rebuttal to defense counsel's argument, the prosecutor argued:
"Ladies and gentlemen I get to talk to you very, very briefly again and the reason that I do is because the State does have the burden of proof in this case. We get a chance to rebut whatever the defense says in closing argument. Something came up in the closing argument that I hated to see arise and I ordinarily wouldn't even honor this comment but I am this time. And that's the subject of race. I don't think it had any place in this trial and I tried to avoid it and always try to avoid it. And I suppose it was aimed at you Mr. Scott and you Mr. Lucas since you are the two black people on this jury. But, let me remind you Mr. Scott it was not me that wanted to remove you from this jury because you would sleep through it. It was defense counsel"
Defense counsel interrupted and objected that the prosecutor improperly referred in rebuttal to defense counsel's challenge for cause of the prospective juror Scott during jury empanelment. The prosecutors replied that defense counsel chose to raise the issue of race in her argument and he should be permitted to rebut. The objection was overruled on that basis and the prosecutor's rebuttal argument continued without further objection by the defense:
"Let me direct these remarks to you Mr. Scott and you, Mr. Lucas. I want to single you out. I had a chance to excuse you from this jury if I wanted to do so. I could have. I simply had to say, I don't want you on this jury and I could have asked to excuse you. I didn't. And the reason I did not is because you both took an oath, you recall thatyou stood up there and raised your right handthat you would fulfill your obligation as a juror and you would apply the law as this judge instructed you to apply the law. What I wanted on this jury and what I *1283 think I got is six sober, responsible people and I don't care if they're green, blue or what color. Like I say, I would not have honored that comment except for defense to bring it up and I apologize to you that it arose. Let's move on."
In this six man felony theft jury trial of two black defendants, where five jurors must concur to render a verdict, defense counsel's closing argument was obviously aimed at what she mistakenly believed to be the innate prejudice of the two black jurors, Scott and Lucas. Little hope is found in this record for a defense acquittal otherwise. Reference to the claim that "racism still exists in our society", and calling attention to the fact that "a lot of people say that all black people look alike" as a slur upon the Negro race, was a studied attempt to intensify what may be considered abrasive dialogue between blacks and whites. Further hints that the black defendant Rogers was disparaged because of his race is brought to the fore by a play upon the principal prosecuting witness' identification testimony to the effect that he had "protruding lips".
An appeal to racial prejudice taints the search for justice regardless of who is responsible for injecting this issue into the trial. It is for this reason that our law reprobates such action. La.Code Crim.Pro. art. 770. To abort the trial, however, the defendant must move for a mistrial. Id. Thus it may be supposed that defense counsel felt she could with impunity remark or comment upon race in closing argument without bringing about a mistrial, and, if the State endeavored to rebut the defense argument on that subject, establish reversible error.
There is, however, a deterrent to this practice which should ordinarily prevent injection of race prejudice into the trial by defense counsel. When such an issue is made in the closing argument of the defense, the defense cannot complain when he opens the door on the subject and provokes a response by the State in the same vein. State v. Taylor, 347 So.2d 172 (La.1977); State v. Sosa, 328 So.2d 889 (La.1976); State v. Cascio, 219 La. 819, 54 So.2d 95 (1951); State v. Green, 205 La. 439, 17 So.2d 620 (1944).
In rebuttal argument the prosecutor sought to assuage the effect of any appeal to the prejudice of the black jurors by making it clear that the State found the black jurors acceptable at empanelment, whereas the defense sought to challenge Scott because he supposedly slept while the prospective jurors were being instructed by the judge.
Standing alone this prosecution argument was both objectionable and probably grounds for a mistrial. Taken as a rebuttal to defendant's closing argument, however, the remarks are an effort by the State to minimize whatever prejudice the defense had aroused in the black jurors by referring to its impartiality in not challenging the black jurors peremptorily. As such the State's rebuttal meets a standard of justice which permits either litigant to rebut the other. Justice would not prevail if the defense could employ tactics which appeal to race prejudice, and complain of a response on that same ground by the State.
Article 774 of the Code of Criminal Procedure directs that closing argument be confined to "evidence admitted" and that the State's argument "be confined to answering the argument of the defendant."
In my view the State's argument was in answer to defendant's. But the defense contends that the State's rebuttal should have been confined to "evidence admitted" and should not have referred to the incidents arising during empanelment of the jury. Such a reference, the argument continues, was beyond the scope of "evidence admitted", meaning evidence admitted during trial of the issue of guilt or innocence.
When the defense ventures beyond the scope of the trial in which the issues of guilt or innocence are involved, the State must do likewise to rebut. Argument by the defense that "racism still exists in our society" is not "evidence admitted," nor is there evidence that "a lot of people say that all black people look alike" at the trial of the issue of guilt or innocence. Nor do *1284 these remarks find support in any part of the record. The defense cannot complain, therefore, because the State used the only incident supported by the record from which an inference could be gained that the State did not rely upon racial prejudice for conviction. Under these circumstances the fact that the incident arose during empanelment of the jury should not afford the defense a ground for complaint. Compare State v. Green, 205 La. 439, 17 So.2d 620 (1944).
Strictly speaking the defense should have moved for a mistrial if the State's rebuttable argument was objectionable as a remark or comment on race because that is the remedy prescribed by Article 770 of the Code of Criminal Procedure in such instances. Moreover, failure of the defense to either object or move for a mistrial because of the second quoted portion of the prosecutor's rebuttal fails to properly present the issue of that argument for review on appeal. La.Code Crim.Pro. arts. 770 and 841. State v. Lee, 340 So.2d 180 (La.1976).
The majority properly affirms.
DENNIS, Justice, dissenting.
I respectfully dissent.
The prosecutor's remark during closing argument clearly went outside the evidence and appealed to a juror's possible prejudice toward the defense counsel. Thus it was a clear violation of La.C.Cr.P. art. 774. The majority opinion concedes this, but excuses the error as having been non-prejudicial. I respectfully disagree. On the record in this case, which discloses that the jury convicted the defendant by a five to one vote, with Mr. Scott, the affected juror, as foreman, the defense was probably prejudiced by the improper remark.
NOTES
[*] Judge Cecil C. Cutrer of the Louisiana Court of Appeal, Third Circuit, participated in this decision as an Associate Justice Ad Hoc.