409 So.2d 588 (1982)
STATE of Louisiana
v.
Frankie S. MIDDLEBROOK a/k/a Frankie Joe Middlebrooks.
No. 81-KA-1442.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied February 19, 1982.
*589 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Sonia D. Peters, Dale G. Cox, Asst. Dist. Attys., for plaintiff-appellee.
Howard M. Fish, and Jeanette G. Garrett, Shreveport, for defendant-appellant.
BOUTALL, Justice Ad Hoc.[1]
Frankie S. Middlebrook was charged and convicted of the crimes of aggravated burglary, a violation of L.R.S. 14:60, and attempted forcible rape, a violation of L.R.S. 14:27 and 14:42.1. He was sentenced to concurrent terms of seventeen and one-half years at hard labor on each count, the first year for the attempted forcible rape to be served without benefit of probation, parole or pardon. He appeals asserting error in both his conviction and sentence.
The crime of which Middlebrook was convicted occurred shortly after 4:00 A.M. on December 7, 1980, at the dwelling of Mrs. H. S. James in Shreveport, Louisiana. A man broke into her house and demanded money of her and demanded sexual intercourse. She resisted and there was some violence. A neighbor heard the noise and called the police. The police found Middlebrook under the victim's bed, nude except for a pullover tank top shirt with a cut above his eye. The charge and conviction followed.
The first assignment of error is that the trial judge erred in denying defendant's motion for mistrial made after the state exercised peremptory challenges to prevent blacks from serving on the jury. It is contended that out of the six peremptory challenges used by the state, five were used to exclude blacks. The defendant, a black man, contends that this action operated to deprive him of his constitutionally protected rights to a fair and impartial trial and to be free from racial discrimination under Article 1, Sections 3 and 16, of the Louisiana Constitution of 1974.
The record shows that one black person actually served on the jury of twelve. Although the state peremptorily excused five black prospective jurors, the defense also peremptorily challenged two prospective black jurors which the state had accepted. Another prospective black juror was excused by the court for cause. The defendant stated that he was unable to establish that the prosecutrix in this case or the district attorney's office had a history of systematically excusing blacks from jury service, and there is no proof of any systematic exclusion of blacks in the record. Defendant asserts that he should not be required to show systematic exclusion of blacks over a period of time and that the mere fact that five of the six peremptory challenges used by the state were used to exclude blacks is sufficient, relying upon the dissent in State v. Eames, 365 So.2d 1361 (La.1978), and the concurring opinion in State v. Robinson, 386 So.2d 1374 (La. 1980).
*590 The jurisprudence of this state and of the United States Supreme Court still requires a showing by the defendant that the state systematically excluded blacks by use of their peremptory challenges in order for the defendant to have relief. State v. Robinson, supra, State v. Rhodes, 351 So.2d 103 (La.1977); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Because there is no showing of a systematic exclusion of blacks in this case, this assignment of error lacks merit.
By the next three assignments of error, Nos. 4, 5 and 6, the defendant contends that the trial court erred in admitting the testimony of three police officers relating various statements made to them by the victim constituting objectionable hearsay.
The statements objected to were made to the police officers when they arrived at the scene of crime and sought to ascertain what had happened. The officers had received a call to investigate a possible burglary in progress at the victim's residence and when they arrived some two minutes later and secured the outside of the house, Mrs. James was standing at her front door. She was nervous and excited and when they asked her what happened she told them that someone was in the house and that something had happened to her. The officers immediately went into her house and searched it quickly but could find no one inside. They came back out again and asked Mrs. James what had happened and at this point she related that she had been awakened by a noise on her front porch. She went and opened the front door and a black male hit her on the face and pushed her into the bedroom demanding money and forcing her on the bed. While he was pulling off his clothes and attempting to get on top of her, she grabbed a stick and hit him on the head. Her assailant was still inside her home hiding underneath her bed. The officers went back into the house and during this search found the defendant under her bed. As the officers were placing the defendant under arrest, they again questioned Mrs. James who told them of how she received injuries to her eye and her leg.
The defendant contends that the judge erred in overruling his hearsay objections, and that the testimony was clearly hearsay because it was offered to show the truth of the matters asserted therein and its value rested upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978). He further contends that the testimony does not come within the res gestae exception to the hearsay rule under the provisions of R.S. 15:447 and 448.
This court has long recognized an exception to the hearsay rule allowing admission of the early complaints of rape victims. At times, the court has characterized these as the "first complaints of rape victims" constituting res gestae exceptions to the hearsay rule. See State v. Adams, 394 So.2d 1204 (La.1981); State v. Brown, 302 So.2d 290 (La.1974). In other cases, the court has referred to such statements simply as "early complaints of rape victims" and ruled that they were admissable as such. See State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Elzie, 351 So.2d 1174 (La.1977). When there is no unexplained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court. We point out in this case that the crime was still in progress in that the defendant was still in Mrs. James' house, and the circumstances were much more immediate than the circumstances in either State v. Elzie or State v. Hatcher. These assignments of error are without merit.
The next assignment of error, No. 7, is based upon the denial of defendant's motion for mistrial made during the testimony of Officer Lupton, who stated that Officer Parker verbally read the defendant his rights at the scene of the crime. Defendant objected and moved for a mistrial based upon the fact that the state had announced prior to trial that it was not going to introduce any statements made by the defendant during its case in chief, and that this irrelevant testimony only served to bring to the jury's attention the defendant's silence after his arrest. The defendant argues that *591 the effect of the testimony was to make the jurors think that the defendant was guilty because he apparently offered no explanation to the police since no statements were introduced into evidence. Accordingly, defendant argues that this is improper use of a defendant's post arrest silence to draw inferences of guilt.
We do not agree with the defendant's appreciation of the effect of the testimony, and place little importance upon it. Primarily, the prosecutor did not directly elicit the testimony from the witness. The prosecutor was eliciting from the witness the series of events when the accused was discovered and was taken from the scene of the crime. In that sequence, the following exchange took place.
"Q. Now, how long were you around in the presence of this man?
A. The suspect?
Q. Yes.
A. From the time we found him to the time we placed him in the paddy wagon, Officer Parker verbally read him his rights."
As we interpret this testimony, the witness simply mentioned the reference to the reading in an effort to place a precise time when he was in the presence of the accused. We cannot see any error in such an oblique and obscure reference to the advisement of Miranda Rights. We had occasion in State v. Mosley, 390 So.2d 1302 (La.1980), to disagree with the conduct of the prosecuting attorney in asking whether defendant was informed of his rights when no statement by defendant was going to be offered. In that case we found no reversible error because the prosecutor did not stress the right to remain silent or attempt to elicit testimony regarding defendant's failure to respond to police questioning. In the present case there was neither any solicitation by the prosecuting officer nor mention of the defendant's right to remain silent. We find no merit to this assignment of error.
The next assignment of error, No. 8, is urged because of the denial of the defendant's motion for a judgment of acquittal, it being contended that under the standard of review set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), no rational trier of fact could find beyond a reasonable doubt that the defendant was guilty of the offenses charged.
First, we note that a motion for acquittal is not the proper vehicle available to a defendant in a jury trial. Code of Criminal Procedure Article 778 applies only to trials by the judge alone.
Next, even considering the standard of review set forth in Jackson v. Virginia, supra, the evidence in this case is more than sufficient to support conviction. Briefly, the testimony of the victim on direct examination is amply supported by the testimony of other witnesses and the physical facts. The testimony of the investigating officers and of the neighbor who called the police because she heard the victim screaming for help and heard loud banging noises on the wall, the cut screen and broken window on the victim's house, the swollen bruised face of the eighty-two year victim all point to the necessary elements of the crimes charged. Even the appearance of the defendant himself who was discovered by the police officers under the victim's bed without any clothes on except a sort of T-shirt pulled up over his head and who bore the mark of a blow on his face leads to no other reasonable conclusion but that the direct examination testimony of Mrs. James was accurate. This assignment lacks merit.
The next assignment of error is No. 10. The defendant urges error in denial of his motion for a mistrial based on improper rebuttal argument by the state. During the state's rebuttal, the prosecuting attorney was attempting to argue to the jury the validity of the testimony of the victim and the comparison of her testimony with the statements made to the police officers at the time of the crime, and stated the following:
"You heard Mr. Fish object to the introduction of those statements, that she made there. The Judge overruled that objection and he said it was res gestae, *592 part of the happening of the event. We say that the events speak for themselves. She made those statements under that immediate pressure of this having occurred right then. It was taking place at that exact moment. I submit to you that makes that statement very reliable."
Defendant points out that the comments concerning his objection were improper under Code of Criminal Procedure Article 774 and refers us to the case of State v. Williams, 373 So.2d 1278 (La.1979). Although the conviction in Williams was not reversed because it was not shown that the remarks influenced the jury and contributed to the verdict, the defendant argues that the present case must be reversed because of the improper argument.
We find no reason to change the principles we relied on in State v. Williams. Before a verdict is set aside on the ground of improper argument, we must be convinced that the remarks influenced the jury and contributed to the verdict. In this case the thrust of the prosecutor's remarks in closing the rebuttal was to the reliability of the res gestae statements made by the victim and the compatibility of her direct examination testimony with the res gestae statements and the physical evidence. We cannot conclude that the one sentence oblique reference referred to in this context affected the jury's verdict. Assignment of error No. 10 is without merit.
The final assignment of error is No. 11, based on a contention that the judge erred in imposing an excessive sentence. The defendant was sentenced to serve seventeen and one-half years at hard labor on each of the two counts with the sentences to be served concurrently. With respect to the sentence imposed for the attempted forcible rape, the first year would be without benefit of probation, parole or suspension of sentence. Defendant attacks that sentence on two bases: 1) That it is excessive in contravention of Article 1, Section 20, of the Louisiana Constitution of 1974, and 2) that it was erroneous to order that the first year of the attempted forcible rape sentence had to be served without benefit of probation, etc.
The crime of aggravated burglary, R.S. 14:60, is punishable by imprisonment at hard labor for not less than one nor more than thirty years. The crime of forcible rape, R.S. 14:42.1, is punishable by imprisonment at hard labor for not less than two nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence. An attempt to commit that crime is punishable under the provisions of R.S. 14:27(D)(3) as follows:
"In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."
In connection with the length of the sentences imposed, we note that they are below the maximum set by statute. The trial judge set forth his reasons for sentence at the sentencing hearing, complying with the provisions of Code of Criminal Procedure Article 894.1 in finding that any lesser sentence would deprecate the seriousness of defendant's crime. The judge considered the relative youth of this defendant (18 years), the fact that he had no prior convictions and that he was a slow learner. However, the other considerations for mitigation of sentence weighed heavily against a lesser sentence. The evidence is clear that the defendant committed an unauthorized and forcible entry at four A.M. into the residence of an eighty-two year old woman who lived alone. He battered the woman, forced her to disrobe and attempted to have sexual relations which she avoided by her screams and her stout defense. We conclude the judge was justified in imposing the sentence that he did and it is not excessive.
As to the argument relating to the sentence for attempted forcible rape we have ruled in State v. Patterson, 250 So.2d 721 (La.1971) and in State v. Glantz, 223 So.2d 813 (La.1969) that the phrase "in the same manner" in the attempted crimes statute *593 means exactly what it says, i.e., that the other aspects of the imprisonment shall be "in the same manner" as provided for in the crime statute itself. Thus, in this case, the judge could properly impose a sentence ordering the first year of the sentence to be served without benefit of probation, parole, or suspension of sentence. This assignment of error is without merit.
Accordingly, the conviction and sentence of Frankie S. Middlebrook are affirmed.
AFFIRMED.
DENNIS, J., concurs. Although I disagree with the statement of what is required by our constitution for proof of racial discrimination in jury selection, it appears that the showing here is insufficient.
JONES, FRED W., Jr., J. ad hoc, concurs and assigns reasons.
JONES, FRED W., Jr., Justice Ad Hoc, concurring:
I agree with the affirmance of the conviction. However, as relates to defendant's sentence, I would remand for re-sentencing. If State v. Jaye, 383 So.2d 1261, holds that there is no mandatory minimum sentence for attempted armed robbery, it would seem to follow that there is none for attempted forcible rapeand this should be remanded for resentencing or "the one year without parole" deleted.

On Application for Rehearing
PER CURIAM.
Rehearing denied. We note, however, that our original opinion incorrectly related that the defendant was sentenced without benefit of probation, parole or pardon. In fact, defendant was sentenced to seventeen and one-half years at hard labor with the first year to be served without benefit of parole or probation, rather than without benefit of parole, probation or pardon.
NOTES
[1] Judges John C. Boutall of the Court of Appeal, Fourth Circuit, and O. E. Price and Fred W. Jones, Jr., of the Court of Appeal, Second Circuit, participating in this decision as Associate Judges Ad Hoc, joined by Justices Calogero, Marcus, Dennis and Watson.