2CHEHARDY, Judge.
Paul J. Collins, convicted by a jury of attempted first degree robbery, appeals his sentence of ten years at hard labor without benefit of parole, probation or suspension of sentence. We affirm.
FACTS
Paul J. Collins was charged with violation of La.R.S. 14:27:64.1, attempted first degree robbery, for attempting to rob Lana Rollins “while leading the victim to reasonably believe he was armed with a dangerous weapon.” A twelve-member jury found him guilty as charged on November 20, 1997. On November 26, 1997, the defendant was sentenced to serve ten years at hard labor without benefit of parole, probation, or suspension of sentence. The defense attorney made an oral objection to the sentence as excessive and an oral motion for reconsideration of the sentence, which the trial judge denied. The defendant’s motion for appeal was granted on December 1,1997.
At trial the State presented the following evidence.
Lana Rollins testified that on June 27, 1997 she was in her first day on the job as a cashier at the Shell gas station convenience store at 2800 Belle Chasse Highway. The only other employee working with her on that day was James, who was in charge of the car wash. At approximately 11:15 a.m., a man entered the hstore and said he had come in because it was raining. Rollins and James were both in the store. The man looked “real nervous” and was “running back and forth.” He kept going in and out of the restroom. He was “just looking around nervous” and he asked Rollins her name. She noticed he kept looking at James and he was carrying a blue handkerchief in his hand. She identified State’s Exhibit 1 as the handkerchief. She said the handkerchief was empty when he came in with it.
Finally, the man went toward the back of the store and Rollins could not see what he was doing. When he came back out he kept looking around and watching James. Then he came and leaned over the counter and asked her about some products behind the cashier’s counter. He kept looking-back, stepping in and out of the store and looking, and then he came back to the counter and leaned over it. He was holding the handkerchief in his hand. It looked like he had something in it that looked silver. She could only see the top part. He then bought some crackers.
She thought he had a gun and she felt nervous and scared. She did not-press the store’s alarm button, however, because it was her first day and she didn’t know how it worked or when to use it. He stood there for a while until more customers came in. Then he went -back into the bathroom and came back out. Rollins testified, “It looked like it was empty again” and the man left the store.
Rollins called her manager and told him someone had just come in with a gun. Her manager asked if he had left and she said yes. He told her that if the man came back, she should hit the alarm button and call the police. She also discussed the incident with James, the other employee, but he had not seen what she saw.
About an hour later she saw the man walking back up the highway. He passed up the store and then came back. He came into the store and went back into the bathroom. She said that was when she pressed the panic button. The man ran out of the store.
L Rollins identified the defendant in court as the man who was at the store that day. She stated further that the store manager arrived and began following the man. When the police arrived, Rollins advised them of the direction that the defendant and her manager had taken. Later that day the police brought the defendant back to the store. They asked Rollins to identify the handkerchief and asked her how he was holding it.
*725 The officers also viewed the store’s surveillance videotape. Rollins explained in court that the video camera is on the side, at an angle behind where she stands. Because of the angle, she said, the videotape does not show the defendant leaning over or talking to her. However, she had no doubt that the defendant was the person she saw or that State’s Exhibit 1 was the bandanna that was covering up the gun.
On cross examination Rollins repeated that the gun she thought she saw was silver and it was covered by the bandanna. She said the defendant never reached that hand over the counter, but he used his free hand to point to the product he was asking her about. James was in the back of the store by the cooler of soft drinks almost the entire time and was never by the front counter. The defendant talked to James and showed him something in a book he was reading. She also admitted that at one point while the defendant was in the store, another customer asked for directions and the defendant gave them to him.
Thuong “Chris” Nguyen testified he owns the Shell gas station and convenience store at 2800 Belle Chasse Highway in Gretna. On June 27, 1997 a new cashier, Lana Rollins, was working her first day at the store. He received a telephone call from Lana around eleven in the morning. Due to a hearsay objection by the defense, Nguyen was not allowed to testify to what Lana told him, but only to | ¿what he said to her. He told her to hit the panic button if the man comes back again. He got another call from her a couple of hours later and told her he was on his way.
Nguyen testified that when he arrived at the store Lana pointed out the suspect to him. Nguyen identified the defendant in court as the person to whom Lana pointed. The suspect was leaving, so Nguyen and his fiancee, Heather Tran, followed him. They observed a blue bandanna and something sticking out from the back of his shirt. They followed him to his trailer and waited for police to arrive.
Nguyen showed the officers where the suspect lived. He observed the police knock on the door and the suspect come out. Nguyen identified the defendant in court as the person who came out of the trailer. The police brought the suspect over to him, where he identified him as the person he had followed from the store. Nguyen heard the suspect tell police that he “never was there.”
Nguyen testified he had seen the defendant at the store three or four times before. He “always acted suspicious” when he came in, would look “real nervous,” using the bathroom several times. Sometimes he would purchase an item, then would leave and come back. Previously, however, he did not have a bandanna or anything in his hand. Nguyen identified State’s Exhibit 1, a blue bandanna, as the one he saw the defendant with on the day he followed him.
Heather Tran, Nguyen’s fiancée, testified she helps Chris Nguyen run his gas stations. She corroborated Nguyen’s testimony, stating they followed the defendant to his house. She also identified the defendant in court. She said when they were following him she saw something sticking out of his pocket that looked like a gun wrapped in a towel. She identified State’s Exhibit 1 as the scarf the police brought over, but also said that normally when the defendant came in the store he would bring a scarf with him, although previously the scarf was red.
| riThe jury was sequestered while the defendant’s motion to suppress his oral statements was heard. After testimony from Sergeant Schmidt, the arresting officer, the court denied the motion to suppress. The jury returned and the trial proceeded.
Sergeant Martin Schmidt of the Gretna Police Department testified that on June 27, 1997 he responded to a call regarding an attempted armed robbery from the Gretna Shell station at 2800 Belle Chasse *726 Highway. He was the first officer to arrive.
Upon reaching the station he spoke with the cashier, a young black lady. She told him that a white male had entered the store earlier that day, loitered a little bit and then asked to use the bathroom, went into the bathroom, came out a short time later, walked through the aisles some more, and approached her counter and the cash register area holding what she could see as an outline of a handgun draped by a blue bandanna. She said that as he approached, however, other customers pulled up and he immediately left. Later that day the same man came back in. She recognized him as the person from earlier, was scared and hit the alarm button. The man went into the bathroom, but came right back out and left the store. She told him the store owner, Mr. Nguyen, had followed the suspect.
Nguyen soon returned and told Officer Schmidt that he had followed the white male that was in the store to a house on Briant Street. Schmidt and Nguyen went in the police unit to 158 Briant Street, which was a trailer home. Schmidt waited for Jefferson Parish Sheriffs units to arrive because the location is in their jurisdiction. While they stood by and Nguyen remained in the police car, Schmidt knocked on the door of the trailer.
Paul Collins came out the rear door of the trailer, holding a Coke wrapped in a blue bandanna. Officer Schmidt explained that he was investigating an attempted farmed robbery at the Shell station at 2800 LA 23. He told the defendant that he was a suspect and advised him of his rights.
The prosecutor asked Schmidt to describe specifically what kind of rights he told Collins he had. Schmidt stated,
You have the right to remain silent. Anything you say can and will be used against you in court. You have a right to an attorney. If you can’t afford an attorney, the court will appoint an attorney to represent you and advise you. You have the right to have your attorney present during any questioning or giving any statements, and do you understand those rights?
According to Officer Schmidt, what happened then “was kind of strange. He started playing word games with me.” The defendant first said, “I couldn’t rob any place because I don’t have a real gun.” Schmidt asked, “Well, what kind of gun do you have?” The defendant replied, “Well, if I have a gun, it would be a toy gun.” Schmidt then asked him to get the toy gun. He accompanied the defendant inside the trailer home, into a bedroom, where the defendant reached down, moved some things out of the way, and picked up a yellow plastic toy gun. The defendant then told the officer, “If I did it, I did it with this.” Officer Schmidt identified State’s Exhibit 3 as the toy gun he collected from the defendant.
Thereafter, Nguyen positively identified the defendant as the person he had followed from the convenience store. The officer then transported the defendant back to the Shell station. There Rollins also positively identified the defendant as the man who had entered the store and approached her with a blue bandanna draped over the outline of a handgun earlier that day. Rollins did not tell Officer Schmidt what color or kind of handgun.
Officer Schmidt then arrested the defendant and again read him his rights. As they were about to drive away from the station Schmidt asked the defendant, “Why did you do this? WTiy did you use a toy gun?” According to Schmidt, the defendant Rsaid, “I was playing like I was robbing her because I like the black girl who works there.” The defendant then was taken to the police station and again was advised of his rights by a written form. The defendant refused to sign it and then made the statement that it wasn’t going to hold up in court. Schmidt asked him no further questions.
*727 The store’s surveillance videotape (State’s Exhibit 2) shows a man exhibiting the behavior described in Lana Rollins’ testimony, who appears to be carrying a light-colored item in one hand at intervals on the tape. Details are unclear in the tape, however.
The defense presented no evidence.
LAW AND ANALYSIS
■ La.R.S. 14:64.1 defines first degree robbery as follows:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
B. Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.
La.R.S. 14:27 defines attempt as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weap-' on with the intent to commit a crime, shall be Insufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
The defendant has made no complaint of sufficiency of the evidence. The defendant’s inculpatory statements to Officer Schmidt, which were ruled admissible, combined with the totality of his behavior at the store, support his conviction beyond a reasonable doubt.
ASSIGNMENT OF ERROR NO. 1
Collins received ten years, half of the maximum sentence for the crime. In his only assignment of error, the defendant complains the sentence imposed is constitutionally excessive.
The defendant argues that he had a toy gun “which he chose not to use” and made no threats or threatening gestures. He states, “At worst, this is a situation where the defendant was actively considering committing a robbery with a toy gun, but of his own volition decided against it.” He asserts, “The attempt here was a particularly weak one which caused very little harm,” and “The ten year sentence at hard labor is grossly disproportionate to the severity of the crime” and “shocks the conscience.”
The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, which has been interpreted by the U.S. Supreme Court to include an element of excessiveness, e.g., that punishment for crime should be graduated and proportioned to the offense, Weems v. United States, 217 U.S. 349, 366-367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). A punishment is “excessive” and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition |inof pain and suffering; or (2) is grossly out of proportion to the severity of the crime. Gregg v. Georgia, 428 U.S. 153, *728 172, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).
Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. “[I]n determining what is excessive punishment both under the federal and our state constitutions the harshness of the penalty must be compared with the severity of the offense.” State v. Goode, 380 So.2d 1361, 1364 (La. 1980).
In reviewing a sentence for excessiveness, we first determine whether there has been compliance with LSA-C.Cr.P. Art. 894.1 in the imposition of sentence. If so, a second inquiry is made to determine whether the sentence is too severe given the circumstances of the case and the defendant’s background. If a needless imposition of pain and suffering and grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, the sentence is considered unconstitutionally excessive as vio-lative of LSA-Const. Art. 1, Sec. 20. Both inquiries must be made to determine if the sentence imposed is proper.
State v. Lobato, 603 So.2d 739, 751 (La.1992). The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion to sentence within statutory limits. State v. Square, 433 So.2d 104 (La.1983).
The threshold question is the appropriate sentencing range. The penalty for first degree robbery is imprisonment at hard labor.“for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.” La.R.S. 14:64.1(B). The penalty for an attempted crime such as first degree robbery is fine or imprisonment or both, “in the same manner as for the offense attempted,” but “such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.” La.R.S. 14:27(D)(3).
Our supreme court has noted, “La.Rev. Slat. 14:27D(3) by its terms provides only a maximum sentence for a conviction of attempting to commit a crime. There hps no express statutory minimum sentence for being convicted of an attempt, and principles of lenity require that the statute be strictly construed.” State v. Callahan, 95-1331, pp. 1-2 (La.3/29/96), 671 So.2d 903.
With respect to whether the defendant was eligible for parole, probation or suspension of sentence, we note our supreme court has also ruled that “in the same manner as for the offense attempted,” as stated in La.R.S. 14:27(D)(3), “means exactly what it says, i.e., that the other aspects of the imprisonment shall be ‘in the same manner’ as provided for in the crime statute itself.” State v. Middlebrook, 409 So.2d 588, 592-593 (La.1982). Thus, where the crime statute prohibits parole, probation and/or suspension of sentence, that prohibition applies to an attempt at the crime.
Therefore, the sentencing range applicable to attempted first degree robbery is from no imprisonment to not more than twenty years imprisonment, without benefit of parole, probation or suspension of sentence.
The next question is whether the trial court complied with the requirements of La.C.Cr.P. Art. 894.1 in imposing sentence. That article sets out the sentencing guidelines which the trial court is required to consider, including conditions under which the court should impose a sentence of imprisonment, and grounds which the court should accord weight in determining whether to suspend the sentence or impose probation. La.C.Cr.P. Art. 894.1(A)-(B). It also requires that the court state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La.C.Cr.P. Art. 894.1(C).
The trial judge imposed a sentence of ten years imprisonment at hard labor, *729 without benefit of parole, probation or suspension of sentence, assigning the following reasons:
Imposing sentence, the Court has taken into consideration the provisions of the Code of Criminal | ^Procedure, Article 894.1 and, further, the Court takes notice of the criminal history of this defendant, that he appears with two pri- or felony convictions, that he has been convicted of a felony, the Court is of the opinion that there is an undue risk during the period of suspended sentence or probation that the defendant would commit an additional crime, and the Court is of the opinion that the defendant is in need of correctional treatment or a custodian environment that can be provided most effectively by his commitment to an institution, that unless the sentence, and which I will now impose, would deprecate from the seriousness of the defendant’s crime.
The Court takes into consideration the statements which were made by the defendant this morning, as well as the argument of counsel, in imposing sentence. The Court is-having observed the video at issue, and, also, the testimony of the witnesses, including the victim and the police officers-takes notice that the jury had before it sufficient evidence by which the verdict which it returned is supported; therefore, the Court sentences the defendant to ten years at hard labor. That sentence is to be served without benefit of probation, parole or suspension of sentence.
The trial judge thus applied the first part of the sentencing guidelines, which state:
A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs:
(1)There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
(3) A lesser sentence will deprecate from the seriousness of the defendant’s crime..
La.C.Cr.P. art. 894.1. The trial judge also considered the defendant’s criminal history, which indicated that the defendant had two prior felony convictions.
We note that other courts have upheld sentences for attempted first degree robbery ranging from eight years at hard labor without benefit of parole, probation |13or suspension of sentence — State v. Thompson, 25,583 (La.App. 2 Cir. 1/19/94), 631 So.2d 555 — to 20 years at hard labor without parole, probation or suspension of sentence — State v. Sweet, 575 So.2d 937 (La.App. 2 Cir.1991); State v. McDowell, 98-391 (La.App. 3 Cir. 10/7/98), 720 So.2d 735, 1998 WL 690653; State v. Coleman, 544 So.2d 1302 (La.App. 4 Cir. 1989). In addition to compliance with the requirements of Art. 894.1, those courts noted the following factors:
1. Devastating emotional and physical injuries to the victim and heinous manner of committing the crime (Thompson);
2. Serious nature of the offense, substantial benefit defendant received as a result of plea bargain, defendant’s very significant, criminal history, defendant’s sporadic employment history, emotional trauma inflicted victims, potential harm threatened by use of a gun, and lack of justification for defendant’s conduct (Sweet);
3. Four prior felony convictions, undue risk that during suspended sentence or probation defendant will commit another crime, defendant in need of correctional treatment or custodial environment, lesser sentence will deprecate seriousness of crime, offender knowingly created risk of death or great bodily harm to more than one person, offender used threats of or *730 actual violence in commission of offense, offender was leader or his violation was in concert with one or more other persons with respect to whom the offender occupied a position of organizer, a supervisory position, or any other position of management (.McDowell );
4. Prior federal conviction for bank burglary, admitted marijuana usage and cocaine addiction, commission of robberies with variety of weapons over 2-1/2 month period, prior arrests for unauthorized use of automobile, theft and possession, defendant’s acts demonstrated a blatant disregard for rights and safety of others, defendant posed great risk of committing future crimes, and any lesser sentence would deprecate the seriousness of his conduct 0Coleman).
Here, the court noted the following factors in imposing imprisonment without benefit of probation, parole or suspension of sentence: two prior felony convictions, undue risk that during the period of suspended sentence or probation the defendant would commit an additional crime, need of correctional treatment or custodial environment that can be provided most effectively by commitment to an institution, and that a lesser sentence would deprecate the seriousness of the crime.
| u We find the trial judge’s reasons for the sentence imposed were appropriate and sufficient. Given the circumstances of the case and the defendant’s background, especially his two prior felony convictions, the sentence was not too severe. Although the circumstances of the crime in this case are peculiar, the sentence is not disproportionate nor does it shock our sense of justice.
The trial court did not abuse its sentencing discretion. Accordingly, the conviction and sentence are affirmed.

AFFIRMED.