452 So.2d 720 (1984)
STATE of Louisiana
v.
Randall LEWIS.
No. KA-1348.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1984.
Writ Granted in Part October 5, 1984.
*723 Peter J. Compagno, Sanford Krasnoff, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Beryl M. McSmith, Asst. Dist. Atty., New Orleans, for appellee.
Before CIACCIO, LOBRANO and WARD, JJ.
CIACCIO, Judge.
Randall Lewis was charged with the crime of forcible rape and a jury convicted him as charged. R.S.14:42.1. The defendant was sentenced to serve thirty (30) years at hard labor at the State Department of Corrections with credit for time served. He was also assessed court cost and in default of this payment he was to serve an additional thirty (30) days in Parish Jail. The defendant appeals his conviction and sentence relying on thirteen (13) assignments of error. We affirm the defendant's conviction. The sentence is vacated and the case is remanded for resentencing.
On October 7, 1982, the victim had attended class at the Southern University lakefront campus. She was given a ride by a professor from the campus to the intersection of Chef Menteur Highway and Press Street, where she was to catch the Broad Street bus to her residence in the uptown Carrollton area. On the night in question it was raining heavily and the victim sought shelter near a Martinizer Cleaners which was located in the shopping center near the intersection. As she waited for the arrival of her bus, a black male in a brown Monte Carlo automobile drove into the area and commented to the victim about the fact that she was waiting in the rain alone. He then drove his car to the pay phone in the vicinity where the victim was standing and he got out of his car and used the phone. He returned to his car but left again and walked behind the victim. He then grabbed her from the rear. The victim was screaming and fighting for her release but her assailant managed to push her into his car on the passenger side.
The defendant drove towards the lake as the victim pleaded for her release. The defendant constantly threatened to kill his victim and he reached under the front car seat, as if attempting to retrieve a weapon. After reaching a residential neighborhood near Mithra Street, the defendant stopped his car, pulled the victim's knees towards him and pulled up her dress. He then proceeded to have sexual intercourse with the victim, without her consent. Following the rape, the defendant apologized repeatedly to his victim and offered to bring her home. The victim tried to talk her assailant into releasing her from the car, but he insisted upon driving her home. He saw her address on a notebook and he then drove her to Carrollton Avenue where he released her in front of the post office. She ran to her house where she told her sister that she had been raped and the police were called.
During this incident the victim made a special effort to remember identifying characteristics of the defendant and his car. With regard to the vehicle she noticed that it was a brown Monte Carlo with golden rims, a yellow breaktag, a torn front seat, the name "Randall" in silver letters on the dashboard and a license with the numbers 6, 5, and B in it. She noticed that the defendant had an indented scar near his right eye. He was wearing a Christ ring, a serpentine chain and thick glasses.
The victim gave these detailed descriptions of the defendant and his car to Officers John Bryson and Geoffrey Kasher. The policemen notified the Rape Squad of the New Orleans Police Department of the incident and then transported the victim to Charity Hospital.
*724 At approximately 1 a.m., the next morning the victim was examined by Dr. Steven Dean, a resident at Charity Hospital and an Acting Assistant Coroner. His examination revealed no signs of physical trauma. She was administered blood tests, pregnancy tests, and a test for venereal disease. A vaginal swab and smear test was administered to the victim. The specimen was left with the nurse in the examination room and was later delivered to the Coroner's Office for analysis.
Patricia Daniels, a medical technologist with the Coroner's Office, examined the specimen which had been kept in a locked refrigerator at her office. The test results were positive, indicating sexual intercourse within 24 hours of the examination. The test did not indicate secretor activity, hence no determination could be made regarding the blood type of the assailant.
Approximately two weeks after this rape occurred the victim was again in the vicinity where the attack had occurred when she saw the defendant in his automobile. She ran to catch a bus in order to elude the defendant because she was afraid he might try to kill her. After this incident the victim called Detective David Seghers of the Sex Crimes Unit of the New Orleans Police Department in order to report this incident. Detective Seghers had interviewed the victim on the night that the rape occurred.
The investigation of this case failed to reveal any further information concerning the identity of the defendant. However, on December 21, 1982 the victim was riding on the Tulane Avenue bus on her way to work when she again saw the defendant's car. The car was parked on Tulane Avenue near Charity Hospital. The victim immediately left the bus and went to the Burger King restaurant to call the police. When the police arrived at the scene and located the victim, she advised the policeman of the location and description of the subject's car. The officer walked to the car and verified the description. Officers Roland Meline and Tommy Tortorich arrived shortly thereafter and placed the victim in the police car in order to await the defendant's return to his car.
The defendant and an unidentified black male companion exited the Charity Hospital Clinic and walked towards the car. The victim became hysterical as she identified the defendant as the man who had raped her. The defendant was placed under arrest. The victim, had exited the police car, was very frightened and began running away. She was later subdued and comforted by Officer Tortorich. The defendant was then transported to Central Lockup and booked with the crime of forcible rape.
The defendant's mother and wife testified that the defendant had received phone calls in August and September, 1982 from an individual who identified herself by the victim's name. They also testified that Lewis had dated someone by this name. They further stated that the defendant would receive phone calls from this person while he was employed at the Marriott Hotel. According to these witnesses, the caller would advise employees of the hotel who answered the phone that the defendant was a "thief and rapist." They contended that this harassment resulted in the defendant's resignation from his position with the hotel. A co-employee of the defendant, Joan Jones, attested to the occurrence of the phone calls. She also stated that the victim, on two occasions, visited the defendant at the hotel.
The victim denied any prior relationship with the defendant. Additionally these facts were also denied by the victim's sister and by her former room mate. Further, several co-employees of the defendant from the Marriott Hotel refuted the statements given by the defendant's sister, mother, and by Ms. Jones concerning the telephone calls and visits of the victim to the hotel.
Assignment of Error No. 1
The defendant, by this assignment, contends that the trial court erred in denying his motion to suppress the identification. He argues that the manner of identification was unduly suggestive and the time lapse between the crime and the confrontation *725 for purposes of identification made the identification unreliable.
Our review of the record indicates the absence of a confrontation process for purposes of identification.
In this case the victim saw the defendant's car and summoned the police. She pointed out the defendant as her assailant, as he exited the Charity Hospital Clinic. The defendant was never presented to the victim as a possible suspect by the police. Accordingly, the trial judge did not err in refusing to suppress the identification evidence. For these reasons, Assignment of Error No. 1 lacks merit.
Assignment of Error No. 2
The defendant, by this assignment of error, contends that the trial court erred in refusing to disqualify a prospective juror for cause. He argues that Juror No. 136 was biased, in that she evidenced by her statements on voir dire that she could not decide this case with fairness and impartiality.
The defendant has a statutorily prescribed right to challenge for cause any juror who "is not impartial, whatever the cause of his partiality." La.C.Cr.P. Art. 797.
The trial court's evaluation of a prospective juror's fairness and impartiality is entitled to great weight and will not be set aside unless it is arbitrary and unreasonable. State v. Eastin, 419 So.2d 933 (La., 1982). In the instant case we find that the trial court judge did not err in refusing to dismiss for cause Juror No. 136.
The following colloquy occurred during the voir dire examination:
BY THE COURT:
Have any one of you or has anyone close to you been the recent victim of a crime? When I put in "close to you," I mean by close acquaintance, somebody relatively near to you, either in affection or by blood. Has anyone been the recent victim of a crime?
BY JUROR NO. 136, CAROL K. FROMHERZ:
Our friend, but no family.
BY THE COURT:
Okay. Something happened to a friend of yours?
BY JUROR NO. 136, CAROL K. FROMHERZ:
Yes, rape.
BY THE COURT:
Rape? And would that affect you? You realize now this is a rape charge we are going to be dealing with here.
BY JUROR NO. 136, CAROL K. FROMHERZ:
I don't know. I don't think it would. No.
BY THE COURT:
The important thing is that you can set that aside what happened to you personally or someone close to you
BY JUROR NO. 136, CAROL K. FROMHERZ:
Right.
BY THE COURT:
and just be able to judge this case on its own merits. Do you think you can do that?
BY JUROR NO. 136, CAROL K. FROMHERZ:
Uh-huh.
BY THE COURT:
Okay.
[Tr. 3-4]
Upon further examination by defense counsel, the juror made the following statements:
BY MR. KRASNOFF:
Because of the fact that your close friend's daughter has been raped and the perpetrator in that particular instance was black, would that affect your thinking in any way in regards to this case?
BY JUROR NO. 136, CAROL K. FROMHERZ:
No, I don't think so.
BY MR. KRASNOFF:
When you say you don't think so, is there any doubt in your mind?

*726 BY JUROR NO. 136, CAROL K. FROMHERZ:
No. No.
[Tr. 4]
The voire dire examination, when considered in its entirety, supports the trial judge's determination that this prospective juror could fairly and impartially serve. Therefore, this assignment of error is without merit.
Assignment of Error No. 3
In assignment of error Number 3, the defendant contends that the trial court erred in "admitting" evidence containing the results of the vaginal swab and smear. Defendant argues that the prosecution failed to connect the results of the evidence examined at the Coroner's Office to the tests that were performed by Dr. Dean at Charity Hospital. A continuous chain of custody is not essential for the admission of demonstrative evidence, provided it is more probable than not that the object introduced is the one related to the case. State v. Sharp, 414 So.2d 752 (La.1982). A lack of positive identification goes to the weight of the evidence, not to the question of admissibility. State v. Sharp, supra. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Sharp, supra.
In this case, the State did not attempt to introduce the swab and smear into evidence. Two witnesses testified with regard to the test conducted on the victim after the rape.
Dr. Dean, the examining physician, testified that he administered the swab and smear test upon the victim. He left the vaginal swab and smear with the nurse in the examination room for transportation to the Coroner's Office. The following morning Patricia Daniels, a medical technologist with the Coroner's Office, found a bag in the locked freezer in her laboratory. The bag bore the name of the victim, the case number and date of the examination. She conducted her analysis on the contents of this bag and reported her findings at the trial.
Although we do not know who transported this item to the laboratory or why the name appearing on its label was that of a physician other than Dr. Dean, these factors would only affect the weight of the evidence. The evidence as a whole establishes that it is more probable than not that the object which was examined by Ms. Daniels was the original swab and smear secured by Dr. Dean from the victim in this case. Accordingly, the testimony elicited from Dr. Dean and Ms. Daniels was a relevant and material subject of inquiry and was properly admitted.
This assignment of error lacks merit.
Assignment of Error No. 4.
The defendant contends, by this assignment, that certain statements made by Cynthia Houston, the victim's stepsister, were hearsay and inadmissible. In particular, his complaint is directed at Ms. Houston's testimony concerning statements allegedly made by the victim concerning the incident of the rape.
Hearsay evidence is generally inadmissible unless it falls within one of the exceptions to the hearsay rule. R.S.15:434; 15:463. State v. Huizar, 414 So.2d 741 (La., 1982).
The statements of which this defendant complains are hearsay, as they were out of court, unsworn statements allegedly made by the victim and they were being offered as an assertion to show the truth of the matters contained therein. State v. Elzie, 351 So.2d 1174 (La., 1977). However, the courts of this state recognize an exception to the hearsay rule concerning the admission of early complaints of rape victims. State v. Middlebrook, 409 So.2d 588 (La., 1982). In Middlebrook, supra at 590, the Louisiana Supreme Court discussed this exception:
This court has long recognized an exception to the hearsay rule allowing admission of the early complaints of rape victims. At times, the court has characterized *727 these as the `first complaints of rape victims' constituting res gestae exceptions to the hearsay rule. See State v. Adams, 394 So.2d 1204 (La.1981); State v. Brown, 302 So.2d 290 (La.1974). In other cases, the court has referred to such statements simply as `early complaints of rape victims' and ruled that they were admissable as such. See State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Elzie, 351 So.2d 1174 (La.1977). When there is no unexplained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court.
In this case, the victim, immediately upon her release from her assailant, ran home and while still visibly upset, related to her stepsister the facts of her rape. These spontaneous utterances, concerning the rape, made without any unexplained lapse of time between the incident and the statements, were properly admitted into evidence.
For these reasons, assignment of error number 4 lacks merit.
Assignment of Error Nos. 5 & 6
The defendant objected and assigned error to the trial court's refusal to permit him to question the victim's stepsister regarding the victim's housemates and male visitors. The court sustained the state's objection on the basis that the inquiries were not relevant.
Evidence in criminal cases is relevant if it tends to show the commission of an offense and the intent or if it tends to negate the commission of the offense and the intent. R.S. 15:441. State v. Huizar, supra. Likewise, evidence is relevant if it is used to explain a relevant fact or support an inference raised by such fact. R.S. 15:441. State v. Huizar, supra. Thus, there should be a logical or rational connection between the fact which is sought to be proven and the fact which is at issue in the case. State v. Whitmore, 353 So.2d 1286 (La., 1977).
The trial judge has wide discretion in determining questions of relevancy of evidence and his determination will not be overturned absent a clear abuse of discretion, particularly when such evidence pertains to the prior sexual relations of the rape victim. R.S. 15:498. See: State v. Naas, on rehearing, 409 So.2d 535 (La., 1981) cert. den. 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332. Under the circumstances of this case the inquiries by the defendant concerning the existence of other sexual conduct by the victim was not a subject of proper inquiry and was irrelevant to the resolution of this case. The trial judge did not abuse his discretion in sustaining the State's objections to such inquiries. For these reasons these assignments of error lack merit.
Assignment of Errors Nos. 8 & 9[1]
By these assignments of error, the defendant complains of the content and scope of the prosecution's closing arguments. In particular, the defendant complains that the prosecutor made comments during his rebuttal closing argument which were not confined to the evidence presented by the defense. Additionally he complains that the prosecutor made remarks which were prejudicial and inflammatory.
Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom and to the law applicable to the case. C.Cr.P. Art. 774. State v. Messer, 408 So.2d 1354 (La., 1982). The state's rebuttal shall be confined to answering the argument of the defendant. C.Cr.P. Art. 774. State v. Prestridge, 399 So.2d 564 (La., 1981). Thus, a prosecutor should refrain from arguments which tend to divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions *728 of the consequences of the jury's verdict. State v. Messer, supra.
The trial judge has wide discretion in controlling the scope of such arguments. State v. Prestridge, supra. This court will not reverse a conviction on the basis of improper closing argument unless it is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Dupre, 408 So.2d 1229 (La., 1982).
The defendant found the following statements by the state objectionable in that they were beyond the scope of rebuttal argument:
I always say mothers have a Constitutional right to protect their children.
* * * * * *
The Defense's case is like that Hollywood set where you have a Western front, but there is no backing behind it. There is no substance. It's a fake.

* * * * * *
He also found the following statements inflamatory:
BY MR. KATZMAN:
Rape number two is what I entitle this half. The rape that occurred in this Courtroom. The lies that occurred in this Courtroom. Look what that victim had to go through. She is called an ex-lover. This is called the humiliated, the woman who is so infuriated, so angryI wanted him to marry me.
* * * * * *
The car, incidentally is a typical rapist's car. It had nowell, had the controls of the locks on the door from the driver's side. If you recall, [the victim] said he let herat the end he let her out. He released some kind of latch.

* * * * * *
We agree that the statements were improper and that they exceeded the bounds of proper closing and rebuttal argument, however, we are not thoroughly convinced that these remarks influenced the jury and contributed to the verdict. For this reason these assignments do not form a basis for reversal of the defendant's conviction.
This assignment is without merit.
Assignments of Error Nos. 11 & 12
The defendant argues, by these assignments of error, that the State should have compelled the defendant to submit to blood and pubic hair test. We know of no authority which would compel the State to proceed in the manner suggested by the defendant and he has cited no authority for his proposition. The manner of prosecution is a matter which is left to the wide discretion of the prosecutor. C.Cr.P. Art. 61. These assignments lack merit.
Assignment of Error No. 13
The defendant contends, by this assignment, that the evidence in this case does not support a finding of guilty beyond a reasonable doubt.
The standard for review of the sufficiency of the evidence is whether a rational trier of fact, when viewing the evidence in the light most favorable to the prosecution could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (U.S., 1979). State v. Edwards, 400 So.2d 1370 (La., 1981).
In this case the defendant was convicted of forcible rape. R.S. 14:42.1. That is, he committed a rape "where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim believes that such resistance would not prevent the rape."
In this case the victim testified that she was taken by force into the car of the defendant. She was repeatedly threatened with loss of her life and was lead to believe that the defendant had a weapon which he kept under the front car seat. The defendant had vaginal sexual intercourse with the victim without her consent. This testimony *729 was compatible with that of the lay witnesses who testified concerning the events immediately following the rape and with the testimony of the expert witnesses concerning the results of laboratory tests conducted upon certain specimens taken from the victim on the night of the rape.
Therefore, the totality of the evidence when viewed in the light most favorable to the prosecution satisfies this Court that any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.
For this reason, assignment of error Number 13 lacks merit.
Assignment of Error No. 10
The defendant contends, by this assignment of error that the trial court imposed an excessive sentence.
The conviction of the crime of forcible rape carries a sentence of not less than two (2) nor more than forty (40) years imprisonment, of which at least two (2) years of the sentence shall be imposed without benefit of probation, parole or suspension of sentence. In this case the trial judge ordered the defendant to serve thirty (30) years at hard labor and to pay court cost and if he should default on this payment, he was ordered to serve thirty (30) days in the parish jail.
The imposition of a sentence within statutory limit may violate a defendant's constitutional rights against excessive punishment. La.Const. Art. 1 Section 20. State v. Sepulvado, 367 So.2d 762 (La., 1979). The courts must attempt to particularize the sentence to the offender. State v. Kersey, 406 So.2d 555 (La., 1981). Therefore, the trial judge is required to state for the record the considerations taken into account in imposing a particular sentence. State v. Simms, 410 So.2d 1040 (La., 1982). He should consider circumstances militating for incarceration and those mitigating against it. State v. Franks, 373 So.2d 1307 (La., 1979). cert. den. 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818.
Evidence presented at trial shows that Lewis used physical force in subduing his victim. He also bruised her shoulder in the struggle. Lewis threatened Ms. Jones with death if she fought back or screamed. Additionally, Lewis made motions under his seat apparently indicating to Ms. Jones that he had a weapon.
At the sentencing hearing the judge took into consideration the defendant's age and the fact that this judge had previously sentenced this defendant for a conviction for aggravated rape. The judge found Lewis to be a potential risk to the community and that he was in need of correctional treatment or a custodial environment. The judge also found that any lesser sentence would deprecate from the seriousness of the defendant's crime. Accordingly, our review of this matter convinces us that the defendant's sentence is not excessive. Therefore, this assignment of error is without merit.
Finally, we have reviewed this case for errors patent on the face of the record, and we find that the trial judge failed to state for the record the length of time that the defendant's sentence was to be served without benefit of parole, probation or suspension. (Errors Patent) C.Cr.P. Art. 920. (Sentencing) R.S. 14:42.1. It is apparent that at a minimum, two (2) years of the defendant's sentence must be without benefit of parole, probation or suspension of sentence. it is also equally clear that up to forty (40) years at hard labor may be imposed without benefit of parole, probation or suspension of sentence. See: State v. Lewis, 412 So.2d 1353 (La.1982). When by law, a sentence, or a part thereof, must be imposed "without benefit of parole, probation or suspension of sentence", the sentence is "unlawfully lenient" if it fails to specify these restrictions. See: State v. Telsee, 425 So.2d 1251 (La., 1983); but See State v. Napoli, 437 So.2d 868 (La., 1983), and State v. Jackson, 439 So.2d 622 (La.App. 1st Cir.1983), writs granted in part and denied in part, 443 So.2d 1123 (La., 1983).
*730 Accordingly, since this defendant was sentenced to thirty (30) years at hard labor, and no mention was made as to what amount of time was to be served without benefit of parole, probation or suspension of sentence, the sentence must be vacated and the case must be remanded to the district court for resentencing in accordance with the reasons expressed herein. See: State v. McCoy, 450 So.2d 690 (La. App., 4th Cir.), footnote 1.
For the reasons assigned the defendant's conviction is affirmed, the sentence is vacated and the case is remanded to the district court for resentencing in accordance with the dictates of this opinion.
CONVICTION AFFIRMED, SENTENCE VACATED. CASE REMANDED FOR RESENTENCING.
NOTES
[1] No assignment of error No. 7 exist in this case.