DAVID S. GORBATY, Judge.
 

 |! Larry J. Ard appeals his conviction of theft. For the following reasons, we affirm his conviction; vacate his sentence and remand.
 

 STATEMENT OF CASE:
 

 On June 1, 2007, Larry J. Ard (“Ard”) was charged by information with theft of over $1,000.00 of cash from Harrah’s Casino on January 30, 2007. Following a jury trial, he was found guilty as charged. On October 18, 2007, Ard filed a pro se motion for new trial. He was subsequently sentenced to ten years at hard labor with credit for time served on December 12, 2007. On August 26, 2008, the trial court granted an out of time appeal pursuant to an August 19, 2008 order from this Court. On January 7, 2009, this Court ordered the trial court to rule on the pro se motion for new trial. The trial court denied the motion for new trial on January 28, 2009. This appeal follows.
 

 FACTS:
 

 Louisiana State Trooper Paul Voitier testified that he works out of an office in Harrah’s Casino, where his office regulates the casino and investigates crimes occurring “near or about” the casino. He participated in investigating the alleged theft by Ard.
 

 | .¿On January 30, 2007, approximately $23,000.00 in chips were stolen from the gaming pit area of the Harrah’s Casino. After receiving a call from the casino reporting the theft, the state police viewed surveillance video and photos obtained from the casino. A video depicted a man walking into the casino and going to a cashier cage, then walking through the casino to Pit 2. The subject entered the pit and went underneath the tables, where he broke into the pit tray and stole chips. The subject then went back to the cashier cage, cashed some of the chips, and left the casino. Ard’s name was obtained by comparing the photos provided by Harrah’s to a computer database at the Hilton Hotel. The investigation also revealed that Ard worked for Marsiglia Construction. A warrant was issued for Ard’s arrest on February 5, 2007.
 

 On February 8, 2007, Trooper Voitier presented a photographic lineup to Regina Augustine, a Harrah’s employee, who identified Ard as the person she saw at the cashier’s cage that day.
 

 Ard was arrested at a construction site where he was working in St. Rose. After being informed of his rights, Ard admitted stealing the casino chips and informed the police that the remainder of the chips could be retrieved from his residence. At his home, Ard signed a consent to search form. Ard assisted in the search by retrieving the chips, which were in a Crown Royal bag, from an opening in his ceiling. The bag contained approximately $17,000.00 worth of casino chips.
 

 The seized chips were photocopied and returned to Harrah’s Casino. Trooper Voi-tier testified that it is standard protocol to return such evidence to the casino. Pictures and photocopies of chips were introduced into the record at trial as State’s Exhibits, and are contained in the record on appeal.
 

 |sThe photocopies and pictures of the chips were introduced at trial as demonstrative evidence. Ard objected, arguing that their introduction would be prejudicial, based on an allegation that, “[hjaving these substitutions really is of no value.” The State explained that the demonstra
 
 *1168
 
 tive evidence was intended “to allow the jury to view the exact amount of chips and denominations that were taken from the ceiling of the defendant’s residence.” The State also introduced a Crown Royal bag for the same reason.
 

 The State also explained why the original chips were not available. The State explained, that Harrah’s “feel[s] it’s imperative that they get the property back.” The trial court found the substitute chips “could be probative” and allowed their admission, subject to the laying of the proper foundation. To do so, the State elicited from Trooper Voitier that twenty-seven five hundred dollar chips and thirty-eight one hundred dollar chips were recovered from Ard’s ceiling. He testified that he was familiar with the colors and denominations of the casino chips. Trooper Voitier also verified that the replacement chips introduced at trial were an adequate representation of $500.00 and $100.00 chips used at Harrah’s. The substitute chips were placed in the substitute Crown Royal bag and shown to the jury to demonstrate how the actual chips appeared when they were seized as from Ard’s home. Trooper Voitier’s involvement with the investigation ended when he booked Ard into Central Lockup.
 

 Mr. John A. Montgomery, a shift supervisor for the Harrah’s Surveillance Department, testified that on January 30, 2007, he investigated a report that an unidentified person was present in one of the pits. Upon reviewing video footage, Mr. Montgomery’s attention was directed to Pit 2, a black jack table. He saw someone breaking into the table. Mr. Montgomery issued a description of the Lindividual and sent his people out onto the casino floor to find him. He subsequently learned that the individual had been photographed at a cashier’s cage.
 

 The video footage also showed that Ard entered the Poydras Street entrance to the casino. He entered the area of Pit 2, with a rag and a spray bottle, and pretended clean the tables. Ard then took a hammer and a screwdriver out of his backpack, struck the Plexiglas on one of the tables, and proceeded to remove chips and place them in his pocket. Ard then went to Cage 1, placed a quantity of chips in front of the cashier, and received cash. At the ' cage, Ard’s picture was taken. Mr. Montgomery explained that Harrah’s takes photographs of anyone cashing $4,000.00 or more in chips.
 

 Lueien Fortune is a security supervisor at the Hilton Hotel. On February 2, 2007, Louisiana State Troopers presented Mr. Fortune with a picture, which he ran through the Hilton’s database. This database contains pictures of individuals who worked for general contractors at the hotel after “the storm.” The search resulted in the identification of Ard.
 

 Regina Augustine is a cashier at Har-rah’s casino. On January 30, 2007, Ms. Augustine served AltI at Cage 1 at the casino. She testified that Ard did not have a “players card” or other identification. Ms. Augustine explained that she talked to Ard in an effort to stall him for enough time to get a surveillance photo. During this conversation, Ard identified himself as '“Lawrence Joseph.” She cashed in $3,200.00 in chips for Ard. Ms. Augustine identified Ard in court as the man she served on January 30, 2007. Prior to trial Ms. Augustine picked Ard out of a photographic lineup presented to her by a Louisiana State Trooper.
 

 | „ERROR PATENT:
 

 The record reveals one error patent. The trial court did not decide Ard’s Motion for New Trial until after issuing sentence, in violation of La. Code Crim. Proc. art. 853. Pursuant to Article 853, a motion for new trial must be filed and disposed of prior to sentencing. This
 
 *1169
 
 Court has held that sentencing prior to a denial of a motion for new trial requires remand.
 
 State v. Lewis,
 
 97-1549, p. 4 (La.App. 4 Cir. 2/3/99), 727 So.2d 1274, 1276;
 
 State v. Booth,
 
 98-2065, p. 9 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 743.
 

 Accordingly, we must vacate Ard’s sentence and remand for resentencing.
 

 LAW AND ANALYSIS:
 

 Ard assigns one error on appeal. He asserts that the trial court erred in allowing the State to introduce “substitute evidence.” At trial, the State was allowed to introduce chips similar to the ones actually seized from Ard’s home. The State was also allowed to introduce a Crown Royal bag that was different from the one seized from Ard’s apartment. Ard asserts this evidence misled the jury as to the evidence’s accuracy and dependability. In support, he cites a case from another circuit,
 
 State v. Brown,
 
 00-1951 (La.App. 1 Cir. 5/11/01), 808 So.2d 622,
 
 citing State v. Manieri,
 
 378 So.2d 931 (La.1979).
 

 The State counters that the demonstrative evidence was relevant and that Ard has failed to specify, beyond any concluso-ry assertions, how introduction of this evidence resulted in any prejudice to him. The State also raises the issue of chain of custody. As the use of demonstrative evidence presumes a break in the chain of custody of the original chips, which were returned to Harrah’s, this is not an issue. The State also argues that any improper admission of demonstrative evidence was harmless error.
 

 |fiIn
 
 State v. Manieri,
 
 the Court stated the general rule that:
 

 In considering whether demonstrative evidence is admissible over an objection that it is unduly inflammatory, the test to be applied is whether the proffered evidence is relevant to any material issue in dispute, and if so, whether its probative value exceeds its probable prejudicial effect.
 

 378 So.2d at 932. Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La.Code Evid. art. 401. Moreover, all relevant evidence is admissible unless constitutionally prohibited. La. Code Evid. art. 402,
 
 State v. Anthony,
 
 98-0406, p. 15 (La.4/11/2000), 776 So.2d 376, 387.
 

 Accordingly, this Court has stated the following on the admissibility of demonstrative evidence:
 

 To be admissible, demonstrative evidence must be identified and authenticated. La. C.E. art. 901. As a foundation for admitting demonstrative evidence, it must be established that the object sought to be introduced is more probably than not connected with the case.
 
 State v. Tatum,
 
 506 So.2d 584 (La.App. 4th Cir.1987);
 
 State v. Matthews,
 
 95-1245 (La.App. 4th Cir.8/21/96), 679 So.2d 977, 984,
 
 writ denied,
 
 96-2332 (La.1/31/97), 687 So.2d 403. A lack of positive identification of demonstrative evidence or its chain of custody goes to the weight of the evidence, not to its admissibility, and the connection of that evidence to the case is a factual matter to be determined by the trier of fact.
 
 State v. Lewis,
 
 452 So.2d 720 (La.App. 4th Cir.1984).
 

 In
 
 State v. Manieri,
 
 378 So.2d 931 (La.1979), our Supreme Court held that it was error to allow the introduction of a weapon which was “similar” to the weapon used during the commission of the charged crime. It reasoned that “the jurors naturally tend to infer a connection between the weapon and the [crime] simply from a mere viewing of the material object, although such a connection is not proved.”
 
 Id.
 
 at 933. In that case,
 
 *1170
 
 the State introduced knives similar to the knife used to 17kill the victim. However, the court found that the erroneous introduction of the knives did not prejudice the defendant because there was no attempt to associate the knives introduced by the State with the knife used by the defendant. In
 
 State v. Villavicencio,
 
 528 So.2d 215 (La.App. 4th Cir.1988), writ denied, 533 So.2d 14 (La.1988), the defendant argued that the court committed reversible error when it allowed the State to introduce a riñe into evidence that was indisputably not used in the commission of the crime for which the defendant stood trial. We found it error to admit the rifle into evidence because it was irrelevant to the case and a jury could improperly infer a connection between the rifle and the crime.
 
 Id.
 
 at 217. However, we held that the error did not constitute reversible error because there was no attempt by the State to link the rifle with the crime and because there was ample evidence to convict the defendant of the murder without the introduction of the rifle. Likewise, in
 
 State v. Everridge,
 
 523 So.2d 879 (La.App. 4th Cir.1988), the defendant claimed that the trial judge erred in allowing a gun into evidence that had not been used in the crime. Again, we found that introduction of the gun constituted error, but that such error was not reversible error. In that case, there also was no attempt by the State to link the gun with the crime and, furthermore, the State did not seek to exploit the admission of the gun.
 

 State v. Richardson,
 
 96-2598, pp. 4-5 (La.App. 4 Cir. 12/17/97), 703 So.2d 1371, 1373.
 

 Generally, a trial court’s determination of relevancy of evidence is subject to review for abuse of discretion.
 
 See State v. Kahey,
 
 436 So.2d 475, 493 (La. 1983). Here, the trial court allowed the State to introduce demonstrative evidence in the form of chips and a Crown Royal bag that were identical to the ones seized from Ard’s house. The trial court’s reasoning in allowing the evidence was that it could be probative.
 

 The probative value of substitute chips is minimal. If the originals had been introduced they would have been relevant to prove that they were the actual stolen property. The substitute chips and bag were introduced as demonstrative evidence, |sbut visualizing a bag of replacement chips in a replacement bag did little to “make the existence” of the fact that Ard stole the original chips from Harrah’s.
 
 See
 
 La.Code Evid. art. 401; La. R.S. 14:67 A. Accordingly, the finding by the trial court that the substitute chips were probative or otherwise relevant is error. However, the jury was informed that the chips were not the chips actually seized from Ard’s house, but were merely being used to demonstrate the volume of the chips seized. The prejudicial impact on the jury was negligible.
 

 Even if the evidence was improperly admitted, it is subject to harmless error analysis.
 
 See State v. Brown,
 
 00-1951, p. 9, 808 So.2d at 627. For an error to be harmless, it must be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict.
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The guilty verdict actually rendered in the trial must be unattributable to the error.
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
 

 The evidence in this case was overwhelmingly condemning. Trooper Voitier testified that Ard admitted stealing the casino chips and took the investigators to where he had hidden them at his home. The casino produced ample footage and photographic evidence of Ard breaking into a “float” and taking the chips. Ms.
 
 *1171
 
 Augustine recognized Ard in court as the man who had cashed $3,200.00 in chips at her cage. The record in this case clearly shows that the verdict would have been the same without the introduction of this evidence; the verdict is not attributable to the replacement or demonstrative evidence introduced at trial. Accordingly, this argument has no merit.
 

 ^CONCLUSION:
 

 The record supports Ard’s conviction; however, we vacate the previous sentence and remand for resentencing.
 

 CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.