Judge Madeleine M. Landrieu
hThe defendant, Edward N. Green, appeals his convictions of three counts of armed robbery with a firearm and the sentences imposed by the trial court. For the reasons that follow, we affirm.
On January 6, 2014, the State charged Mr. Green with the armed robbery with a firearm of three individuals, a violation of La. R.S. 14:64.3. At his arraignment Mr, Green pled not guilty. The trial court denied Mr. Green’s motion to suppress the evidence and found probable cause. The case was tried before a jury on January 21-22, 2015. The jury returned a unanimous verdict of guilty on all counts. Mr. Green filed motions for new trial and for post-verdict judgment of acquittal, which were denied. On June 26, 2015, the court sentenced Mr. Green to twenty years at hard labor on each of the three counts, plus an additional five years on each count for the use of a firearm, for a total of twenty-five years on each count, without benefit of probation, parole or suspension of sentence, with credit for time served, and ordered that the sentences be served concurrently.
Mr. Green appeals his conviction and sentences, asserting three assignments of error:
(1) The evidence is insufficient to support the conviction;
|2(2) The trial court erred by denying the defendant’s motion in limine to exclude from evidence two guns retrieved in a search of the defendant’s residence; and
(3) The sentences imposed are excessive.
*105 FACTS
In the early morning hours of July 5, 2013, the three victims: Matthew Merris (Matthew), Daniel Dilzell (Daniel) and Cecily Fogarty (Cecily), were at Cecily’s house on Coliseum Street when they were robbed at gunpoint.
Daniel testified that as he and Matthew were sitting and talking on the back porch of the house, he felt someone come up behind him. He turned and saw a light brown-skinned male, who had the lower portion of face covered with a shirt or bandana, standing in the porch doorway, pointing a gun in his face. Daniel recalled that the porch was well-lit the night of the robbery.
Matthew testified that when he saw the man enter the porch, he initially did not think anything was amiss because he knew that another friend was supposed to stop by the Coliseum Street residence. However, as the man stepped into the light, Matthew noticed his dreadlocks and the Rasta-type hat he wore, and saw that he was wearing a mask and pointing a gun at them. The intruder demanded their money and cell phones. At that point, Daniel ran inside the house to alert Cecily and call the police. The robber ordered Matthew to get on the floor, and, as he did, Cecily came out onto the porch to see what was going on. The robber ordered Cecily back into the house and again demanded the money and the cell phones, which were sitting on a table on the porch. After taking the phones and money from Matthew, the intruder left. Matthew waited until he was sure the intruder was gone before he got up and ran back into the house.
IsCecily testified that she was inside her house at about 3:15 a.m. when she heard a loud commotion on the back porch. Moments later, Daniel ran into the house; he was frantic. She knew Matthew had been with Daniel on the back porch, so she decided to investigate. When she opened the door leading onto the porch, she saw Matthew crouched underneath the porch table. She then saw the intruder with the lower part of his face covered, pointing a gun at her. The robber put the gun to her head and ordered her back into the house. Cecily went back inside and called 911. She told the dispatcher that the robber was wearing a black hat and described the gun the robber was using as being a “gunmetal” color.
New Orleans Police Department Detective Michael DiMarco investigated the armed robbery. Det. DiMarco contacted Matthew and obtained a physical description of the robber. Next, he spoke with Cecily, who gave a similar description. In the course of the investigation, the detective learned that iPhones belonging to Matthew, Daniel and Cecily, as well as $30.00 in cash, had been stolen during the robbery. Matthew asked the detective whether he should cancel his phone service. Det. DiMarco said no, telling Matthew to keep his phone service active because the police might be able to trace any calls made by the assailant. Thereafter, Matthew obtained his phone records and provided Det. DiMarco with a list of the phone numbers that had been called. Det. DiMarco singled out three calls that had not been made by Matthew. His investigation of the phone numbers to which these three calls had been placed led him to develop the defendant as a suspect,[1]
*106 |4Pet. DiMarco searched the police database for the defendant’s name and obtained a picture of the defendant. Thereafter, he located the defendant’s address and obtained a search warrant for that location. Accompanied .by other officers, Det. DiMarco executed the search warrant. The defendant’s grandmother answered the door and directed the police to the defendant’s bedroom.. Det, DiMarco confiscated three cell phones, which belonged to the three victims of this armed robbery. The detective also recovered a black' ,380 Bersa semi-automatic handgun from atop a chest of drawers in the defendant’s bedroom, a chrome and black BB gun, a black Rastafarian-style hat and a bank statement bearing the defendant’s name.[2] Shortly thereafter, Det. DiMarco presented photo lineups to Matthew and Cecily, both of whom identified the defendant as the robber.[3] Based upon their identifications, Det. DiMarco obtained a warrant for Mr. Green’s arrest. Officer Harold Nunnery arrested Mr. Green on November 6, 2013. Matthew and Cecily identified the defendant at trial as the person who had robbed them.
ERRORS PATENT
A review for errors patent on the face of the record reveals none.
SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, Mr. Green argues that the evidence presented at trial was insufficient to convict him of the charged offenses.
| ¡¡This court set forth the standard of review for sufficiency of the evidence in State v. Watkins, 2013-1248, pp. 13-14 (La. App. 4 Cir. 8/6/14), 146 So.3d 294, 303, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4 Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall-, Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La. 1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may *107 be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt, standard. State v. Jacobs, 504 So.2d 817 (La. 1987).
La. R.S. 14:64(A) defines armed robbery as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.”
Here, Mr. Green first argues that the State failed to prove Cecily was the victim of an armed robbery because the evidence showed she was in the house when her cell phone was taken from the porch.
|fiIn State v. Doan, 519 So.2d 174, 176 (La. App. 4th Cir.1987), this Court explained:
The requirement that there be property taken “from the person of another” has been broadened to include taking “in the presence of the person.” The felonious taking, more than the perfect title of the alleged owner, is the essence of the jury question in robbery cases. State v. Refuge, 300 So.2d 489 (La. 1974). See also State v. McClanahan, 262 La. 138, 262 So.2d 499 (1972); State v. Sanford, 446 So.2d 1381 (La.App.1st Cir. 1984).
It is sufficient if the property is under the person’s control so that, had the victim not been subjected to violence or intimidation by the robber, he could have prevented the taking. State v. Mason, 403 So.2d 701 (La. 1981). Property is considered taken from the presence of the victim even if the victim is in one room while valuables located in another room are removed. State v. Verret, 174 La. 1059, 142 So. 688 (1932); See also State v. Baldwin, 388 So.2d 664 (La. 1980), cert. denied 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981); La-Fave & Scott, Criminal Law § (1982).
For example, in State v. Long, 36,167, ppi 8-9 (La.App. 2 Cir. 10/30/02), 830 So.2d 552, a metal box containing money was taken in the armed robbery of a Moody’s Lounge while' the employee on duty was in the restroom, and the court found the money was sufficiently within the employee’s control to establish armed robbery.
In the present case, Cecily testified that after hearing a commotion on her porch, she went to investigate and was immediately threatened by the defendant, who put the gun against her head and ordered her back into the house; Based upon the aforementioned jurisprudence, even though Cecily was inside when the defendant took her cell phone from the porch table, she still possessed sufficient control over her phone to satisfy this element of armed robbery.
Additionally, Mr. Green contends the State failed to present sufficient 'evidence to prove his identity. When the identity of .the defendant as, the perpetrator is disputed, the State must negate any reasonable probability, of 17misidentification in order to satisfy its burden under Jackson v. Virginia, supra State v. Briley, 2013-1421 (La.App. 4 Cir. 10/1/14, 8), 151 So.3d 633, 639.
Here, the defendant was- identified as a suspect from Det, DiMarco’s investigation of the telephone calls that had been placed from Matthew’s cell phone after his phone was stolen. Pursuant to a search warrant, *108 the three cell phones belonging to the three victims in this case were seized from the defendant’s bedroom. Additionally, Cecily and Matthew each identified the defendant in separate photo lineups and also at trial. Based on this evidence, we conclude the State proved the defendant’s identity as the perpetrator beyond a' reasonable doubt.
This assignment of error has no merit. ADMISSION OF IMPROPER EVIDENCE
In his second assignment, the defendant argues the trial court erroneously admitted into evidence a handgun and a BB gun retrieved during the search of his residence. The defendant contends that he was unfairly prejudiced by this evidence because none of the victims identified either weapon as the one used in the robbery.
In denying the defendant’s motion in limine to exclude the handgun and BB gun, the trial judge opined:
... [T]o deny the State the opportunity to present the evidence that was seized pursuant to the legally executed and legally obtained warrant would stymie the efforts of the State in presenting to the fury [sic] a full and complete picture of law enforcement efforts made in this case, and therefore, the Court will deny the motion in limine allowing the State to introduce the guns. It’s up to them whether they show the guns to the victims or just introduce them as seized evidence pursuant to the search warrant.
All relevant evidence is admissible, and evidence that is not relevant is not admissible. La. C.E. art. 402. Louisiana Code of Evidence article 401 defines |srelevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” A trial court’s ruling as to the relevancy of evidence will not be disturbed absent a clear abuse of discretion. State v. Girard, 2012-0790, p. 6 (La.App. 4 Cir. 3/6/18), 110 So.3d 687, 691.
Louisiana Code of Evidence article 403 states: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” “Unfair prejudice,” as used in La. C.E. art. 403, means that “the offered evidence has ‘an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.’ ” Author’s Note (3), La. C.E. art. 403, Handbook on Louisiana Evidence Law, Pugh, Force, Rault & Triche, p. 380 (2011).
In this case, the State did not attempt to prove that either of these two guns was used in the robbery. The State asserted that the guns seized from the defendant’s residence were relevant because they showed the defendant had access to guns. Each victim testified at trial that he/she could not identify the particular gun the defendant wielded when he robbed them. Moreover, the investigating detective testified that the victims had not been able to identify the gun used. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. State v. Dove, 2015-0783, p. 30 (La.App. 4 Cir. 5/4/16), 194 So.3d 92, 112.
If evidence has been improperly admitted, the trial court’s decision to admit such evidence is subject to a harmless error analysis. State v. Ard, 2008-1440, p. 8 (La.App. 4 Cir. 6/17/09), 15 So.3d 1166, 1170. For an error to be harmless, it Umust be shown beyond a reasonable *109 doubt that the complained-of error did not contribute to the verdict. Id. (citing Chapman v. California) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The guilty verdict actually rendered in the trial must be unattributable to the error. Id. (citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).
Considering the totality of the evidence, we conclude that the admission of the guns seized pursuant to the search warrant executed at the defendant’s residence did not contribute to the verdict. Therefore, even if the trial court erred by admitting the guns, an issue which we do not reach, such error would be harmless.
This assignment of error lacks merit. EXCESSIVE SENTENCES
In his final assignment, the defendant complains his sentences are unconstitutionally excessive.
In State v. Celestain, 2013-1262, pp. 16-17 (La.App. 4 Cir. 7/30/14), 146 So.3d 874, this Court set forth the standard for reviewing excessive sentence claims:
La. Const. art. I, § 20 explicitly prohibit excessive sentences. State v. Baxley, 94-2982, p. 4 (La. 5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Francis, 96-2389, pp. 6-7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, supra. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 676. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 10, 656 So.2d at 979.
|1ftAs articulated in State v. Stanfield, 2010-0854, p. 6-7 (La.App. 4 Cir. 1/19/11), 56 So.3d 428, 430, in reviewing a claim that a sentence is excessive the appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C. Cr. Proc. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
Id., 2013-1262, pp. 16-17, 146 So.3d at 884.
In this case, the statutory range for a conviction of armed robbery in violation of La. R.S. 14:64(B) is a sentence of ten to ninety-nine years at hard labor. La. R.S. 14:4.3 provides for a five-year enhancement where a firearm is used in the commission of the robbery. Accordingly, Mr. Green faced an enhanced sentence on each count ranging from fifteen to one hundred and four years; however, he was sentenced to twenty-five years on each of the three counts of armed robbery, with the sentences to be served concurrently. Mr. Green argues that these sentences are excessive considering that he has only one prior conviction in 2010 for possession of stolen property, for which he was sentenced to forty days of community service.
*110 We disagree. We cannot say the sentence imposed in this case is grossly disproportionate to the offense.
In sentencing Mr. Green, the trial judge admonished him on the record, stating;
The court takes into account the sentencing guidelines that are articulated in the Louisiana Code of Criminal Procedure. And obviously, the most aggravating circumstance of this case is that there were three victims on that porch who were held up at gunpoint with an allegation that one of the victims»was struck in - the head with a pistol and another victim saying that the gun was held to her temple during this armed robbery.
|tl The court also notes as an aggravating circumstance that you had to be extradited or were extradited from Florida, You were in a stolen car when you were caught in Florida and apprehended and extradited back to Louisiana to face these charges.
Further as an aggravating circumstance, again, when the police went to execute the arrest warrant in your home, there were other items that had been stolen from various incidents. The police recovered a handgun, ammunition, three stolen iPhones, four GPS systems that were stolen, a Lexis key to a stolen vehicle, two laptop computers that were stolen, two iPods that were stolen, and a camera system that was stolen through various burglaries in New Orleans.[4]
* * *
Again, I as the judge, cannot overlook certain things in the case: The testimony of the victims. The impact that this has obviously had. One victim, where the house was located of this robbery, sold her house because she was so traumatized- and did not want to live in that house,anymore, I believe she received a letter from you. I don’t take any ill intent from you sending her that letter but, again that, just in her mind, I .believe probably she felt that you knew where she lived and she sold the house and had to move.
The trial court s additionally noted that the defendant had rejected two. pretrial plea deals, one that would have required him to serve ten years and a later offer of fifteen years.
Mr. Green’s sentence on each count of armed robbery is at the low end of the statutory sentencing range. Moreover, Mr. Green’s sentences are lower than those that have been imposed on similarly-situated defendants, For example, in State v. Spencer, 2014-0003 (La.App. 4 Cir. 10/8/14), 151 So.3d 816, this Court affirmed as not excessive concurrent sentences of thirty-five years at, hard labor, without benefit of probation, parole or suspension of sentence, with each sentence enhanced by an additional five years at hard labor without benefits, for a defendant convicted of two counts of armed robbery with a firearm.
| iaMr. Green has failed to show that the trial court abused its discretion in sentencing him.
There is no merit to this assignment of error.
CONCLUSION
Accordingly, for the reasons stated, the defendant’s convictions and sentences are affirmed.
AFFIRMED
LOBRANO, J., CONCURS AND ASSIGNS REASONS.

. One of these three calls was made to the defendant’s sister, who gave Det. DiMarco her brother’s name. During the trial, Deputy Jim Huey of the Orleans Parish Sheriff’s Department, the custodian of inmate telephone calls, identified a recording of a jailhouse phone call made by Mr. Green to his sister. In the recording, which was played for the jury, the defendant tells his sister he is no longer angry *106 with her because she "did what she had to do.”

. In addition, the detectives recovered other items, such ás laptops and a camera, which they determined to be property that had been reported as stolen iii other incidents.

. The third victim, Daniel, was not asked to view any photo lineups because he had indicated he would not be able to identify the intruder.

. The record reflects that Mr. Green was also charged with two counts of possession of stolen property valued at between $500 and $1,500 and three counts of possession of stolen property valued at under $500, to which he pled guilty on May 29, 2015, and was sentenced on June 26, 2015, These charges are not pertinent to this appeal.